Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5636 | **DATE** | 9/22/2004 |
| **CASE TITLE** | EEOC vs. Caterpillar Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 10/6/2004 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Caterpillar's motion for partial summary judgment (Doc. No. 11-1) is denied. The EEOC will be permitted to proceed on its sexual harassment claims on behalf of women who worked with Robert Garcia at Caterpillar's Aurora, Illinois facility.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 23 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/22/2004 | |
| | | 2004 SEP 22 PM 3:52 | date mailed notice | |
| ETV | courtroom deputy's initials | | ETV | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
SEP 2 3 2004

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) | No. 03 C 5636 |
| ) | |
| CATERPILLAR INC., ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

The Equal Employment Opportunity Commission ("EEOC") has filed this class action lawsuit against Defendant Caterpillar Inc., alleging a pattern and practice of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The Complaint arises out of a Charge of Discrimination filed by Karon Lambert, a former employee of Caterpillar, in which she alleged that her supervisor sexually harassed her and then terminated her employment when she rebuffed his advances. The charge did not purport to raise any "pattern or practice" claims, but the EEOC seeks in this case to represent a "class of female employees." Asserting that this lawsuit is limited by the scope of Ms. Lambert's charge, Caterpillar seeks partial summary judgment on the EEOC's class-based allegations. For the reasons set forth below, the motion is denied.

### BACKGROUND

Karon Lambert worked for Caterpillar as an Industrial Hygiene & Safety Supervisor at the company's Aurora, Illinois facility. (Def. 56.1 ¶ 6.)[1] Throughout her employment, she reported to Robert Garcia, Caterpillar's Safety & Security Manager. (*Id.* ¶ 7.) On February 5, 2002, Lambert filed a Charge of Discrimination with the EEOC alleging that Garcia terminated her employment on January 3, 2002 because she rejected his sexual advances. (*Id.* ¶¶ 6, 8, 9.) The charge did not

---

[1] Defendant's Local Rule 56.1 Statement of Material Facts as to Which There is No Genuine Issue is cited as "Def. 56.1 ¶ __."

allege that Garcia or any other Caterpillar employee had sexually harassed or retaliated against any other named female employees, though it did state generally that Garcia "advised me [Lambert] which . . . employees would 'sleep with me' if given an opportunity"; that Garcia said Lambert was "a part of his 'harem'"; and that Garcia "would make comments about women in the office and identify those who had 'good looking boobs.'" (Id. ¶ 10; Pl. 56.1 Resp. ¶ 10; Charge of Discrimination, Ex. A to Pl. 56.1.)[2]

On February 6, 2002, the EEOC sent Caterpillar a Notice of Charge of Discrimination ("Notice") regarding Lambert's charge. The Notice had an "X" marked in the box indicating that Lambert "claims to be aggrieved," but did not have a similar mark indicating that she was "filing on behalf of another." (Def. 56.1 ¶¶ 12, 13.) Caterpillar responded to Lambert's charge on March 5, 2002, denying the allegations and submitting affidavits from three female employees – Ergonomics Coordinator Jessica Hardy, Safety Statistician Jennifer Logel, and Ergonomics Intern Vickie Pittenger–all of whom denied that Garcia had acted unprofessionally or inappropriately towards them. (Id. ¶¶ 9-21; Hardy, Logel, and Pittenger Affs., Exs. B, C, and D to Def. 56.1; Statement of Position, Ex. 3 to Miller Aff., at CAT0061-0063.) Caterpillar claims that "[a]t no time did [the company] believe that the EEOC was investigating any class-type allegations." (Id. ¶¶ 17, 18.)

The EEOC insists that on May 15, 2002, Investigator Kathleen Leaver told two Caterpillar managers, Sharon Hoerr, Corporate Employment Programs, and William Miller, Labor Relations Representative, that women other than Lambert had complained about Garcia's sexual harassment. Specifically, Leaver assertedly reported that Judy Green Sawyer, an employee of Vallens Safety Supply, an independent contractor that operated the Safety Store at Caterpillar's Aurora facility, told Leaver during an interview on March 14, 2002, that Garcia had sexually

---

[2] The EEOC's Response to Defendant's Local Rule 56.1 Statement of Material Facts as to Which There is No Genuine Issue is cited as "Pl. 56.1 Resp. ¶ __." Plaintiff EEOC's Local Rule 56.1 Statement of Additional Facts Requiring the Denial of Summary Judgment is cited as "Pl. 56.1 ¶ __."

2

harassed her on multiple occasions.[3] (*Id.* ¶ 27; Pl. 56.1 Resp. ¶ 18; Leaver Decl. ¶¶ 7, 8; Pl. 56.1 ¶ 12; Leaver Notes of 3/14/02, Ex. 2 to Leaver Decl., at E096.) In addition, the EEOC notes that as part of its investigation, it requested "all employee complaints made against Mr. Garcia, including those made by contracted employees," and not just complaints raised by Lambert. In response to that request, Caterpillar disclosed that Ann Marie Logan, a manager trainee with Vallens Safety Supply, had alleged that Garcia had brushed against her breasts, making her feel uncomfortable.[4] According to Leaver, Logan told her during an April 30, 2002 interview that Garcia had also "touched Melanie [Hatland], Judy [Green Sawyer], [and] Dena [Behrens]." (Def. 56.1 ¶¶ 25-27, 29; Pl. 56.1 Resp. ¶¶ 36, 39, 45; Leaver Notes of 4/30/02, Ex. 1 to Leaver Decl., at E088; Pl. 56.1 ¶¶ 15, 16.)

Miller says that Logan admitted during Caterpillar's investigation of the complaint that she did not know whether Garcia's conduct was inadvertent or intentional. (Def. 56.1 ¶ 28; Miller Aff. ¶ 16.) Leaver insists, however, that Logan told her during the April 30, 2002 interview that she had notified Caterpillar that Garcia's actions were intentional. (Pl. 56.1 Resp. ¶ 28; Leaver Notes of 4/30/02, Ex. 1 to Leaver Decl.) In any event, after investigating Logan's complaint, Caterpillar removed Garcia from his responsibility for the Safety Store on or about February 25, 2000, "as a precautionary measure." (Def. 56.1 ¶ 30; Answers to Questionnaire, Ex. 4 to Miller Aff.) Logan reportedly told Leaver, however, that after about a month, Garcia started going into the store again "but would bring security with him and smirk at Logan." (Pl. 56.1 Resp. ¶ 30.)

---

[3] Caterpillar objects to this evidence, and to other statements offered by the EEOC, as inadmissible hearsay and as statements that are not based on personal knowledge. (Defendant's Response to Plaintiff EEOC's Local Rule 56.1 Statement of Additional Facts, at 1-3.) To the extent the court will consider only whether the EEOC may proceed with a pattern and practice claim, and not whether it has in fact established one, these objections are overruled.

[4] According to Caterpillar, Garcia allegedly "brushed his hand across [Logan's] breasts"; the EEOC says Garcia "rubbed up against her breast three times in the safety store." (Def. 56.1 ¶ 28; Pl. 56.1 Resp. ¶ 28.)

On May 15, 2002, the EEOC interviewed Garcia, Hardy, and Logel at Caterpillar's Aurora facility.[5] Hardy and Logel denied that Garcia had ever acted inappropriately towards them and generally failed to corroborate Lambert's allegations against him. (Def. 56.1 ¶¶ 32, 33; Pl. 56.1 Resp. ¶ 33.) On September 13, 2002, the EEOC issued its Determination of Lambert's charge, finding that "the evidence obtained in the investigation establishes reasonable cause to believe that Caterpillar discriminated against Lambert and a class of female employees, based on their sex, female, in that they were subjected to sexual harassment and retaliation, including discharge." (Id. ¶ 35; Ex. 5 to Miller Aff.) The Determination did not identify any female employees other than Lambert who had allegedly been subjected to sexual harassment or retaliation. (Id. ¶ 37.) Caterpillar claims that the Determination letter constituted its first notice of class-wide Title VII allegations. (Id. ¶¶ 36, 39, 45.)

On August 13, 2003, the EEOC filed this lawsuit alleging that Caterpillar subjected Lambert and "a class of female employees" to a pattern and practice of sexual harassment and retaliation since at least 1999. (Def. 56.1 ¶¶ 42, 43.) The Complaint does not identify by name any female employees besides Lambert who were subjected to sexual harassment and retaliation. (Id. ¶ 47.)

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). The court's function in ruling on a motion for summary judgment is not

---

[5] The parties do not explain why Leaver did not interview Pittenger.

to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Where factual matters are in dispute, the court is required to credit the nonmovant's version of events. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 802 (7th Cir. 2000).

Caterpillar seeks partial summary judgment on the EEOC's pattern and practice claim, arguing that (1) there is no reasonable nexus between Lambert's charge and the pattern and practice allegations; (2) the pattern and practice claim did not grow out of the EEOC's investigation of Lambert's charge; and (3) pattern and practice claims are not appropriate in sexual harassment cases. The court addresses each argument in turn.

## A. Reasonable Nexus

Title VII establishes several prerequisites to the EEOC's filing suit in federal court: (1) a timely charge of discrimination; (2) employer notification and an investigation; and (3) if reasonable cause is found, an attempt to eliminate the offending practice through "conference, conciliation, and persuasion." *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 968 (7th Cir. 1996). If conciliation fails, the EEOC may commence a civil action and may allege "whatever unlawful conduct it has uncovered during the course of its investigation, provided that there is a reasonable nexus between the initial charge and the subsequent allegations in the complaint." *Id. See also* 42 U.S.C. § 2000e-5.

Caterpillar argues that the EEOC cannot assert pattern or practice allegations in this case because it did not first file a Commissioner's charge raising such claims. (Def. Mem., at 3-5.)[6] Title VII provides that "the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission." 42 U.S.C. § 2000e-6(e). In Caterpillar's view, "[b]ecause [Lambert's] charge was not a pattern and practice charge, the Commission has no

---

[6] Defendant's Memorandum of Law in Support of its Motion for Partial Summary Judgment is cited as "Def. Mem., at ___."

5

authority to act on that charge by alleging a pattern or practice in this lawsuit." (Def. Mem., at 5) (citing *Walner*, 91 F.3d 963.)

In *Walner*, the EEOC filed a pattern and practice lawsuit based on a charge of discrimination filed by Patricia G. Shepard. 91 F.3d at 965. It is not clear whether that charge alleged a pattern and practice claim, but the "tactical decision" to rely on Shepard's allegations turned out to be problematic because the EEOC "admitted in its response to Walner's motion that it had failed to make any determinations with regard to Shepard's charge." *Id.* at 969-70. The Seventh Circuit explained that:

> EEOC puts the cart before the horse by suggesting that it does not need an independently sufficient charge in order to file a lawsuit and obtain the discovery through which it may uncover these additional instances of discrimination. This argument recalls the aphorism that discovery is not to be used as a fishing expedition. . . . We do not propose to limit in any fashion EEOC's investigations into allegations of discrimination as envisioned by Congress when it expanded EEOC's enforcement powers in the 1972 amendments to Title VII. However, these investigations may not be accomplished through a process of discovery that follows a complaint based upon an insufficient charge of discrimination.

*Id.* at 971-72. *See also EEOC v. Jillian's of Indianapolis, IN, Inc.*, 279 F. Supp. 2d 974 (S.D. Ind. 2003) (allowing the EEOC to pursue pattern or practice claim arising from four individual charges filed against Jillian's Indianapolis, but finding that a nationwide class was not reasonably anticipated in the EEOC's investigation of those charges).

In this case, Caterpillar does not dispute that the EEOC determined that Lambert and a "class of female employees" were subjected to sexual harassment and retaliation. In other words, the EEOC is basing its class allegations on a valid, underlying charge of discrimination and a finding of reasonable cause. *Compare Walner*, 91 F.3d at 971 ("EEOC virtually conceded in its motion for reconsideration that it has no valid charge upon which to base a complaint"). Nothing in *Walner* supports Caterpillar's insistence that the underlying charge must allege a pattern or practice of discrimination in order to support such allegations in federal court. Rather, *Walner* recognizes that the EEOC may allege in a complaint "whatever unlawful conduct it has uncovered

6

during the course of its investigation, provided that there is a reasonable nexus between the initial charge and the subsequent allegations." *Id.* at 968 (citing *EEOC v. United Parcel Serv.*, 860 F.2d 372, 374 (10th Cir. 1988) (fact that original plaintiff settled his claim did not prevent the EEOC from challenging discrimination affecting unidentified members of a known class)).

Caterpillar argues that pursuant to *EEOC v. United Air Lines, Inc.*, 287 F.3d 643 (7th Cir. 2002), "there is no reasonable nexus between an individual charge of discrimination and an allegation of class-wide discrimination." (Def. Mem., at 7.) In *United Air Lines*, the EEOC sought to enforce an administrative subpoena issued during the course of its investigation into a flight attendant's allegations of national origin and sex discrimination. *Id.* at 646. The flight attendant claimed that the airline failed to make contributions to the French social security system on her behalf. *Id.* at 654. In its subpoena, however, the EEOC asked for information about all benefits "with respect to all United employees residing abroad." *Id.* The court found that nothing in the charge suggested systemic discrimination with respect to life, health, disability, or leave benefits, and stated that "[a]llowing the EEOC to conduct such a broad investigation would require us to disregard the Congressional requirement that the investigation be based on the charge." *Id.* at 655. The court noted that if the EEOC did discover evidence of a pattern of discrimination with respect to the additional benefits, it could file a Commissioner's charge and proceed accordingly. *Id.* at 655 n.7.

Unlike in *United Air Lines*, the EEOC here is pursuing a class-based sexual harassment and retaliation claim that is directly related to Lambert's allegations of similar wrongdoing. Caterpillar insists that it had no notice that the EEOC was investigating class-wide allegations because Lambert's charge did not indicate that she was "filing on behalf of another" or assert any claims against anyone other than Garcia. (Def. Mem., at 8.) The court agrees that to the extent the EEOC's administrative investigation did not uncover any allegations of sexual harassment or retaliation relating to anyone other than Garcia, the EEOC may not now pursue such claims on

7

behalf of a class. *See, e.g., Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) ("the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals"). The EEOC may, however, "seek relief on behalf of individuals beyond the charging parties who are identified during the investigation." *EEOC v. Dial Corp.*, 156 F. Supp. 2d 926, 935 (N.D. Ill. 2001) (quoting *EEOC v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir. 1996)).

Caterpillar argues that it was denied the opportunity to conciliate the class claims as provided by statute. (Def. Mem., at 5.) Caterpillar has not presented any evidence regarding the EEOC's conciliation efforts, however, much less evidence demonstrating that the agency failed to make "a sincere and reasonable effort to negotiate." *Dial*, 156 F. Supp. 2d at 940 (quoting *EEOC v. Prudential Fed. Sav. and Loan Ass'n*, 763 F.2d 1166, 1169 (10th Cir. 1985)). (*See also* Determination, Ex. 5 to Miller Aff.) (inviting Caterpillar to engage in conciliation efforts by submitting proposed terms).

The court is satisfied that there is a reasonable nexus between Lambert's charge and the pattern and practice allegations in this case. *See Dial*, 156 F. Supp. 2d at 937 (finding reasonable nexus between charge alleging that individual was the victim of a sexually hostile work environment and EEOC complaint alleging a pattern or practice of tolerating sexual harassment). Caterpillar's motion for partial summary judgment is denied. The court will permit EEOC to pursue sexual harassment and retaliation claims with respect to women who worked with Garcia at Caterpillar's Aurora facility.

## B. Allegations "Grown Out" of EEOC Investigation

Caterpillar next claims that the pattern and practice allegations did not grow out of the EEOC's investigation of Lambert's charge, and that the EEOC has "sued first and hopes to determine the scope of the 'class' later." (Def. Mem., at 8-10.) Caterpillar insists that it had no idea

that the EEOC was investigating a pattern or practice of discrimination and that, in any event, the investigation did not uncover any such systemic discrimination. (Def. Mem., at 8; Def. Reply, at 5.)[7]

As noted, Lambert's initial charge did not allege that any other women had been sexually harassed by Garcia. In addition, Caterpillar submitted affidavits from three women who denied that Garcia had behaved inappropriately towards them, and two of those women (Hardy and Logel) affirmed those sentiments during an interview with EEOC Investigator Leaver on May 15, 2002. At the same time, Leaver interviewed Judy Green Sawyer on March 14, 2002, and reportedly learned that Garcia had repeatedly brushed up against her breasts with his hand, arms, and elbows, and that Sawyer had been written up and then transferred when she complained. (Leaver Notes of 3/14/02, Ex. 2 to Leaver Decl., at E096.) In addition, the EEOC specifically asked for information relating to "all employee complaints made against Mr. Garcia, including those made by contracted employees," and Caterpillar disclosed that Ann Marie Logan of Vallens Safety Supply had complained about Garcia brushing his hands across her breasts. When Leaver interviewed Logan on April 30, 2002, she said that she had been fired for poor performance shortly after she complained about Garcia, and that he had also "touched Melanie [Hatland], Judy [Green Sawyer], [and] Dena [Behrens]." (Leaver Notes of 4/30/02, Ex. 1 to Leaver Decl., at E085, E088.)

Caterpillar claims that Logan admitted she did not know whether Garcia's conduct was inadvertent or intentional, but Leaver's notes indicate that Logan thought he deliberately touched her breasts. (Leaver Notes of 4/30/02, Ex. 1 to Leaver Decl., at E086.) Caterpillar did investigate the complaint and remove Garcia from his responsibility for the Safety Store, but Logan told Leaver that after about a month, Garcia started going into the store again "but would bring security with him and smirk at Logan." (Pl. 56.1 Resp. ¶ 30; Leaver Notes of 4/30/02, Ex. 1 to Leaver Decl., at

---

[7] Defendant's Reply Memorandum in Support of its Motion for Partial Summary Judgment is cited as "Def. Reply, at __."

E086.) As for Caterpillar's knowledge that the EEOC was investigating these additional complaints, the EEOC claims that on May 15, 2002, Leaver told Caterpillar managers Sharon Hoerr and William Miller about Sawyer's allegations, and that on May 21, 2002, Leaver told someone at Caterpillar that "there is a lot of activity going on in [Caterpillar's] plant that is questionable." (Leaver Notes of 5/21/02, Ex. 6 to Leaver Decl.)

The court finds sufficient evidence that the EEOC found reasonable cause to believe that Caterpillar was engaging in a pattern or practice of sexual harassment and retaliation based on interviews with Caterpillar and Vallens Safety Supply employees. *See Dial*, 156 F. Supp. 2d at 939 (finding no reason to doubt that the EEOC issued its reasonable cause determination based on its review of sexual harassment complaints "as well as other evidence"). Whether the evidence actually sufficed to establish reasonable cause is not a proper subject for review. *Id.* ("reasonable cause determination is not subject to judicial review"); *Walner*, 91 F.3d at 968 n.3 ("determination of reasonable cause is only an administrative prerequisite to a court action and has no legally binding significance in subsequent litigation"). Thus, Caterpillar has not presented any basis for concluding that the EEOC's class-based allegations did not grow out of its investigation into Lambert's charge.

### C. Viability of Pattern or Practice Claims in Sexual Harassment Cases

Caterpillar's final argument – that pattern or practice theories are not viable in sexual harassment claims – merits little discussion. Caterpillar concedes that the EEOC does not have to bring pattern or practice cases under FED. R. CIV. P. 23, *General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318 (1980), but argues that like class actions, pattern or practice claims are only appropriate in "challenging a policy of general application that adversely impacts a class of readily identifiable individuals." (Def. Mem., at 11.) In Caterpillar's view, sexual harassment cases are inherently individualized and do not implicate such general

policies. (*Id.*) Courts in this district, however, have routinely rejected this argument. *See, e.g., Dial*, 156 F. Supp. 2d at 946 (collecting cases); *EEOC v. Mitsubishi Motor Mfg. of America, Inc.*, 990 F. Supp. 1059, 1070 (C.D. Ill. 1998) ("[t]his Court does not need to make a great leap of faith to state the obvious: Title VII authorizes a pattern or practice action for sexual harassment"). As these courts explain, pattern or practice claims do not turn on individual experiences; rather, "[t]he existence of a company's policy of tolerating sexual harassment is the basis for pattern or practice liability." *Mitsubishi*, 990 F. Supp. at 1074.

Caterpillar insists that *Dial* and *Mitsubishi* are not controlling. Unlike this case, Caterpillar says, *Mitsubishi* was based upon a Commissioner's charge and therefore comports with 42 U.S.C. § 2000e-6(e); *Dial*, which took no account of that provision, must be disregarded. (Def. Mem., at 13-14.) The court has already rejected the argument that pattern or practice claims require an underlying pattern or practice charge and declines to ignore precedent on that issue. *See Walner*, 91 F.3d at 968 (EEOC may allege in complaint "whatever unlawful conduct it has uncovered during the course of its investigation, provided that there is a reasonable nexus between the initial charge and the subsequent allegations"). Caterpillar's remaining objections similarly repeat arguments previously addressed and rejected by this court. (Def. Mem., at 13-16.) The court finds *Dial* and *Mitsubishi* persuasive and sees no reason to depart from their reasoning in this case.

Equally unavailing is Caterpillar's claim that the bifurcated proceeding described in *Mitsubishi*, addressing first, a pattern or practice of sexual harassment, and second, individuals' entitlement to relief, violates the Seventh Amendment. (Def. Mem., at 15-16.) *See Mitsubishi*, 990 F. Supp. at 1070-82. The Seventh Circuit recently found that "[c]ertifying a class for injunctive purposes, while handling damages claims individually, does not transgress the seventh amendment." *Allen v. International Truck and Engine Corp.*, 358 F.3d 469, 471 (7th Cir. 2004). In addition, until discovery in this case is completed, the court declines to decide, as a matter of law, that the EEOC cannot establish a pattern or practice of sexual harassment and retaliation.

(Def. Reply, at 8-13) (arguing that "the agency has too few incidents to support a pattern or practice claim"). The EEOC's lawyers, like lawyers who represent private parties, are bound by the requirements of Rule 11, and the court presumes counsel have adhered to those requirements in filing their complaint.

## CONCLUSION

For the reasons stated above, Caterpillar's motion for partial summary judgment (Docket No. 11-1) is denied. The EEOC will be permitted to proceed on its sexual harassment claims on behalf of women who worked with Robert Garcia at Caterpillar's Aurora, Illinois facility.

ENTER:

Dated: September 22, 2004

REBECCA R. PALLMEYER
United States District Judge